**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Igor BAZAROV, ) | |
| ) | C.A. No. 1:26-cv-13199-MJJ |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| David WESLING, et al., ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM IN SUPPORT OF PETITIONER'S**
**EXPEDITED MOTION TO ENFORCE JUDGMENT**

## I.    INTRODUCTION

Despite this Court's July 16, 2026 Order (ECF No. 9) that Petitioner be provided with a constitutionally-adequate bond hearing, Petitioner Igor Bazarov ("Petitioner" or "Mr. Bazarov") was unlawfully denied bond and remains detained by Respondents at the Plymouth County Correctional Facility. On July 27, 2026, Immigration Judge ("IJ") Kathryn Frames denied Petitioner bond in proceedings that did not comply with the Due Process Clause of the Fifth Amendment of the U.S. Constitution, the standards established in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), and this Court's Order. A true and correct copy of the Bond Order of the Immigration Judge is attached as Exhibit 1 to the Declaration of Irene C. Freidel ("Freidel Decl.") filed herewith.

Mr. Bazarov entered the United States seeking safety in October 2021. He approached the border and requested asylum. Mr. Bazarov is a Russian citizen who has suffered past persecution and has a well-founded fear of suffering future persecution in Russia based on his Uzbek ethnicity. Mr. Bazarov has remained in the United States since he arrived. He filed his

1

currently pending I-589 application for asylum in October 2022. A true and correct copy of Petitioner's Evidence in Support of Bond, which includes the receipt for his asylum application, is attached as Exhibit 3 to the Freidel Decl. Mr. Bazarov reasonably fears that if he is removed to Russia, he will be killed.

Despite Mr. Bazarov's demonstrated community ties, eligibility for immigration relief, access to *pro bono* legal counsel, lack of criminal history, and medical challenges following his ICE arrest, the IJ denied Mr. Bazarov bond on the grounds that he is a flight risk. Ex. 1, Freidel Decl. IJ Frames' reasoning rested on, among other things, the fact that Mr. Bazarov has "only resided in the United States for five years" and **<u>erroneously</u>**, that "in his short duration, [he] participated in violent criminal conduct." Ex. 1 at 4. There was no admissible evidence that Mr. Bazarov ever committed an act of violence and, indeed, IJ Frames did not find that Mr. Bazarov was a danger to the community. Ex. 1 at 3. IJ Frames also determined that Mr. Bazarov was a flight risk because he had lived in different states since arriving in the United States and, also erroneously, has no fixed address. *Id.* at 4. Last, IJ Frames stated that Mr. Bazarov's immigration relief was "speculative" since his asylum application is still pending. IJ Frames concluded that there was no amount of bond or conditions that "would reasonably assure [Mr. Bazarov's] attendance at future hearings." Ex. 1 at 4.

The IJ's denial of bond failed to comply with the procedural protections required under *Hernandez-Lara* and the Due Process Clause, including with respect to the allocation of burdens of proof and consideration of less restrictive alternatives to detention. **Therefore, Petitioner respectfully requests that this Court enforce its Order and grant his immediate release.** In the alternative, Petitioner requests that this Court, pursuant to its equitable powers, release him on alternatives to detention such as GPS monitoring, hold its own bond hearing, instruct the

Immigration Court to hold a new bond hearing that complies with this Court's original Order, or grant any other relief the Court deems just and proper.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.  Petitioner's Life in the United States and Bond Evidence

Mr. Bazarov is an Uzbek native and citizen of Russia. He entered the United States to seek asylum in October 2021, fleeing Russia due to harm he experienced based on his Uzbek ethnicity. Freidel Decl., Ex. 3, Tab A; *see also id.*, Tab B (I-589 receipt). After filing his asylum application, Mr. Bazarov obtained legal work authorization.

Mr. Bazarov has worked hard to support himself and positively contribute to his community since his arrival to the United States. He has been employed by several different companies including as a telecommunications tower technician in the Northeast. Prior to his detention, Mr. Bazarov was working for a moving company, Phoenix Moving Solutions, which provided a letter of support stating that Mr. Bazarov was an excellent employee and they would gladly re-employ him upon his release. Freidel Decl., Ex. 3, Tabs H & I. Mr. Bazarov also started his own catering business, *Men with Hands, LLC*, in 2024. He has registered his business with the IRS and is looking forward to being able to grow the venture. *See*, *id.,* at Tab G. Mr. Bazarov even hosted a free BBQ in Brooklyn to support the community. *See* photos submitted at Ex. 3, Tab D.

In total, Mr. Bazarov provided 10 letters of support, from family, friends, co-workers, and current and former employers. The letters consistently describe Mr. Bazarov as honest and hardworking, as a valuable member of the community and a nonviolent and morally upright man. *See* Freidel Decl., Ex. 3, Tabs E, H-O. Mr. Bazarov's sponsor with whom Mr. Bazarov would live if released has provided his address in Laconia, NH, a copy of his green card, utility bill

(confirming his address), and his income documentation. Ex. 3, Tab E. In short, Mr. Bazarov has a strong community in New Hampshire, a stable home and fixed address, good employment, his own company, a pending asylum application, and no criminal convictions anywhere.

Mr. Bazarov only prior encounter with law enforcement involved a fine in Florida for driving an unregistered motor vehicle, which resulted in a warrant that caused Mr. Bazarov to come to ICE's attention. A true and correct copy of the Department of Homeland Security's Submission of Evidence is attached as Exhibit 5 to the Freidel Decl. Mr. Bazarov explained in a supplemental declaration that he did not fully understand his obligations arising from the fine, but that he paid the ticket and the matter is resolved. He is deeply sorry for his mistake and has learned that he must fully understand his legal obligations. He expressed that he will follow the instructions of the Immigration Court because he is committed to pursuing his asylum claim and living a lawful life in the United States. Freidel Decl., Ex. 4.

Since his arrest by ICE, Petitioner has remained in Respondents' custody at the Plymouth County Correctional Facility in Plymouth, Massachusetts. He has suffered depression, anxiety, and panic attacks while in ICE custody. *See* Freidel Decl., Ex. 3, Tab C (medical records). Mr. Bazarov is now in removal proceedings before the Chelmsford Immigration Court. His merits hearing on his pending asylum application is scheduled for August 24, 2026. Freidel Decl., Ex. 2.

### B. **Petitioner's Bond Hearing**

On July 23, 2026, IJ Frames of the Chelmsford Immigration Court held a bond hearing in Petitioner's case pursuant to this Court's Order. *See* ECF No. 9. As discussed above, in advance of the hearing, Mr. Bazarov, through *pro bono* counsel, submitted significant evidence documenting his lack of flight risk. Exs. 3 & 4, Tabs A-Q. In opposition to Mr. Bazarov's

request for bond, DHS submitted an I-213 record detailing Mr. Bazarov's immigration history and his ICE arrest, and multiple pages of a warrant from the Hillsborough County Sheriff in Florida arising from an unresolved charge against Mr. Bazarov for operating an unregistered motor vehicle. Freidel Decl., Ex. 5, DHS Bond Evidence.

The IJ denied bond after the hearing by issuance of a written decision on July 27, 2026. Freidel Decl., Ex. 1. She found that DHS had met its burden of proving Mr. Bazarov posed a flight risk by a preponderance of the evidence and that no amount of bond or conditions would assure the court that Mr. Bazarov would appear for future hearings on his asylum application. The IJ's decision thereby suggests the IJ's belief that Mr. Bazarov would abandon his asylum application rather than appear in the Immigration Court. In making her decision, the IJ failed to meaningfully credit any of the positive factors presented in favor of Petitioner's release, and her written decision (Ex. 1 at page 4) regarding flight risk appears to cite and rely on erroneous statements regarding a criminal history Petitioner does not possess. Ex. 1 at 4 (mistakenly referencing "charges" that "are still pending" and "violent criminal conduct").[1]

## III.   ARGUMENT

### A.   <u>This Court has Jurisdiction to Decide Petitioner's Motion to Enforce</u>

Federal district courts have jurisdiction to order the release of any person who is held in custody in violation of the laws or Constitution of the United States. 28 U.S.C. § 2241(c). "A district court retains jurisdiction to 'review compliance with its earlier order conditionally granting habeas relief,'" and federal courts have repeatedly considered whether an immigration judge complied with its prior order requiring that the immigration judge hold a constitutionally

---

[1]While DHS's I-213 references an alleged arrest of Petitioner in New York, DHS could not produce any court or police records showing that Petitioner was actually charged or prosecuted. Ex. 5. The IJ did not credit the statement as supporting a finding of dangerousness. Ex. 1 at 3.

adequate bond hearing. *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 142 (D. Mass. 2019) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)); *see also Vacas Espinoza v. Moniz*, No. 26-11472-DJC, Doc. No. 15 (D. Mass. June 17, 2026); *Montesinos Olivar v. Wesling*, No. 26-11102-ADB, Doc. No. 14 (D. Mass. May 7, 2026); *Loja Loja v. Moniz*, No. 26-11826-MJJ, Doc. No. 10 at 5-6 (D. Mass. April 28, 2026); *Li v. Wesling,* 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026); *Costa v. McDonald*, No. 25-CV-13469-AK, 2026 WL 371198 at *4 (D. Mass. Feb. 10, 2026); *Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691, at *1 (D.R.I. Feb. 9, 2026); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025); *Mendez Trigueros v. Guadian*, No. 1:26-cv-205, Doc. 13, at 5 (E.D. Va. Feb. 18, 2026); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *Enoh v. Sessions*, No. 16-CV-85-LJV, 2017 WL 2080278 (W.D.N.Y. May 15, 2017); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders …..").

Other sessions of this Court have found that immediate release of the petitioner is the appropriate remedy where similar due process violations were implicated. *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 ("where a petitioner . . . is unlawfully determined to be a flight risk, courts have regularly ordered immediate release") (quoting *Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility et al.*, No. 26-11740-AK, 2026 WL 1453510, at *7 (D. Mass. May 22, 2026)); *Olivar*, no. 1:26-cv-11102-ADB, Doc. No. 10; *Loja Loja v. Moniz*, No. 11826-MJJ, Doc. No. 10 at 6 (D. Mass. April 28, 2026) (finding that ordering a new bond hearing would be futile where the petitioner had already been denied bond without due process); *Mijango Velasco v. Wesling*, No. 26-11355-LTS, Doc. No. 19 (D. Mass. April 24, 2026) (ordering immediate

release);  *Li v. Wesling*, 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026) (same); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026) (same); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025) (same); *I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025) (same).

Federal courts generally do not have jurisdiction to review "discretionary judgment[s] regarding the application of" 8 U.S.C. § 1226. 8 U.S.C. § 1226(e). *See also Demore v. Kim*, 538 U.S. 510, 518–22 (2003). Notwithstanding 8 U.S.C. § 1226(e), federal courts may consider three types of arguments. *Miti*, 2026 WL 884639 at *4. First, courts may consider habeas petitions arguing that a detainee's due process rights were violated. *See id.* ("The Court's task is therefore simply to ascertain whether the immigration court's discretion was exercised in a manner consistent with due process"); *Hernandez-Lara*, 10 F.4th at 28. Second, courts may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted). Third, courts may also consider petitions arguing that the type of evidence presented at a bond hearing "'could not – as a matter of law – have supported' the immigration judge's decision to deny bond." *Id*. at 143 (quoting *Hechavarria*, 358 F. at 240); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision.").

Here, Mr. Bazarov was denied a constitutionally compliant bond hearing because the IJ failed to allocate the proper burdens of proof, the IJ's exercise of discretion was arbitrary and capricious, and the IJ failed to meaningfully consider less restrictive alternatives to detention. This "is precisely the type of constitutional claim that belongs in federal court." *Higiro v.*

*Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. 8 at 9 (D.R.I. Mar. 13, 2026); *see also Adegbenro v. Nessinger*, No. 1:26-cv-00110-MSM-AEM, Doc. No. 15, at 2 (D.R.I. Apr. 1, 2026) ("The Petitioner raises a constitutional due process challenge to the legal sufficiency of the evidence supporting his continued detention, not merely a disagreement with the IJ's discretionary weighing of the record.").

Administrative exhaustion is not required in this case. Mr. Bazarov is detained by Respondents, and every day in detention is a loss of liberty that causes him irreparable harm. District courts have repeatedly held that administrative exhaustion is not required where the petitioner is actively detained in ICE custody. *See, e.g., Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15; *Miti*, 2026 WL 884639, at *5; *Adegbenro*, No. 1:26-cv-00110-MSM-AEM, at 2-3; *Costa,* 2026 WL 371198 at *3; *Romero v. Hyde*, 795 F. Supp. 3d 271, 280 (D. Mass. 2025). "This loss of liberty is further compounded due to the considerable amount of time—up to six months, in many cases—it takes for the BIA to decide bond appeals." *Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691 at *6 (D.R.I. Feb. 9, 2026); *see Miti*, 2026 WL 884639 at *5.

Moreover, the BIA lacks jurisdiction to adjudicate the constitutional claims raised by Petitioner, and any attempt to raise such claims before the agency would be futile. *See Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions").

Finally, a circuit court appeal of a BIA decision is not available for custody redetermination proceedings; thus "a petition for a writ of habeas corpus, filed in the appropriate district court, is the only mechanism by which a noncitizen may seek judicial review of an IJ's bond decision."

8

*Mayancela v. FCI Berlin*, No. 25-cv-348-LM-TSM, 2025 WL 3215639, at \*4 (D.N.H. Nov. 18, 2025) (citations omitted). Therefore, this Court has jurisdiction to review this Motion.

**B. Petitioner Should Be Released Because His Bond Hearing Did Not Comport with Due Process.**

       **1. The IJ did not properly allocate burdens of proof in compliance with *Hernandez-Lara*.**

In bond proceedings within the First Circuit, the government bears the burden to prove that an applicant poses a danger to the community by clear and convincing evidence or a flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 41; *see also Brito*, 22 F.4th at 246; *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021). Here, the IJ unreasonably found that the Petitioner posed a flight risk by a preponderance of the evidence, such that no amount of bond or other conditions could ameliorate his risk of flight. Freidel Decl., Ex. 1.

The District Court has authority to enforce its decision when the Petitioner has demonstrated that the IJ has failed to properly allocate the burden of proof, either by pointing to the language of the IJ's order, or by showing that the evidence itself, as a matter of law, could not have supported the IJ's decision to deny bond *Diaz Ortiz*, 384 F.Supp.3d at 143 (citing *Hechavarria*, 358 F. at 240); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15; *Mayancela v. FCI Berlin*, No. 25-cv-348-LM-TSM, 2025 WL 3215639, at \*5 (D.N.H. Nov. 18, 2025) ("Although the court may not review the IJ's discretionary judgment, the IJ does not have discretion to fail to apply the burden of proof that due process requires.") (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176 (D.D.C. 2015)); *Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255, at \*3 (D. Mass. Apr. 14, 2020) ("[A] district court retains jurisdiction to review compliance with its earlier order conditionally granting habeas relief.") (quoting *Diaz Ortiz*, 384

9

F. Supp. 3d at 142); *see also Rosa v. Garland*, 114 F.4th 1, 14-15 (1st Cir. 2024) (finding court has jurisdiction to review immigration agency decisions concerning whether it followed binding precedent). Here, the government did not meet this burden, and the IJ improperly denied bond despite the government's failure to demonstrate by a preponderance of the evidence that Mr. Bazarov poses a flight risk so high that no amount of bond could ameliorate his risk of flight.

First, the IJ's written order denying bond does not clearly demonstrate that the IJ properly allocated the burden of proof to the government. The application of legal standards requires more than just a statement; the legal standard must be meaningfully applied. *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025) ("Merely stating the proper standard does not discharge the obligation to correctly apply the standard"); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 (citing *Akinsanya* when an IJ did not properly allocate the burden when denying bond on flight risk).

The IJ's written decision does not contain any detailed reasoning why Mr. Bazarov's evidence of substantial community ties, lawful employment, pending asylum application, including his letters of support as well as his sworn affidavit, was not enough to establish his rooted connections to the community, especially after they were admitted without objection. Freidel Decl., Exs. 2 & 3; *see Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 ("The immigration judge's failure to consider probative evidence submitted by Petitioner and the lack of same submitted by the government in their flight-risk determination "falls short of the evidentiary standards set forth in Hernandez-Lara.'"); *Loja Loja v. Moniz*, 1:26-cv-11826-MJJ, Doc. No. 10, at 6 (D. Mass. Apr. 28, 2026) ("An IJ may not simply ignore substantial testimonial and documentary proof, yet the IJ here appears not to have considered Petitioner's wife's testimony.") (quotations omitted). The IJ does nothing more than acknowledge that the evidence

10

was submitted, but she gives no explanation for why she categorically assigned none of it any weight or why the weight she did assign was insufficient in contrast to the narrative presented by DHS. Acknowledging that positive equities exist does not discharge the IJ of the obligation to meaningfully analyze its value under the burdens of proof. *See Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15.  Thus, the IJ's bond decision does not affirmatively indicate that the IJ properly allocated the burden of proof to the government, and in fact, the meaningful absence of reasoning in the language of the decision strongly indicates that only a cursory attempt was made to hold DHS to its proper burden.

Second, the evidence on the record, could not, as a matter of law, have supported the denial of bond. The standard of proof for a finding of flight risk is "preponderance of the evidence." *Hernandez-Lara*, 10 F.4th at 41. In *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993), the Supreme Court explained that the preponderance of the evidence standard requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before finding in favor of the party bearing the burden of proof. Significantly, "Before any such burden can be satisfied in the first instance, the factfinder must evaluate the raw evidence, finding it to be sufficiently reliable and sufficiently probative to demonstrate the truth of the asserted proposition with the requisite degree of certainty." *Id.*

Here, DHS submitted an I-213 record, along with the Hillsborough County, FL warrant for the motor vehicle charge. Ex. 5. Such evidence, as a matter of law, could not have supported the denial of bond on grounds of flight risk.[2] DHS presented nothing to discredit the voluminous

---

[2] In the First Circuit, a law enforcement report cannot, as a matter of law, be afforded substantial weight in an IJ's analysis without further corroboration or a conviction. *See Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (holding that "the agency may not give 'substantial weight to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report") (quoting *Matter of Arreguin*, 21 I. & N. Dec. 38, 42 (BIA 1995)). *See also Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 3; *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15. Nor can the agency broadly find that corroboration exists where the corroborating information is not named or identified. *See Maurice v. Bondi*, 154 F.4th 15, 21-22 (1st Cir. 2025).

evidence submitted by Mr. Bazarov in support of his application for bond. Freidel Decl., Ex. 3 & 4. The evidence submitted addressed multiple factors enumerated in the BIA's decision in *Matter of Guerra*, including demonstrating a fixed address, employment history, availability of immigration relief, length of residence, and family and community ties. 24 I&N Dec. 37, 40 (BIA 2006). DHS did not address or rebut any of this evidence, yet the IJ on her own concluded that Petitioner "does not appear to have a fixed address" and has lived in four states during his five years in the United States. Ex. 1 at 4. The Court's finding that Petitioner does not have a "fixed address" is erroneous.

Petitioner submitted a letter from his sponsor Uladzislau Pyshkin stating that Petitioner would live with him at 150 Blueberry Lane, Pt. 9, Laconia, NH. Freidel Decl., Ex. 3 at Tab E. Mr. Pyshkin provided proof of his residential address, lawful immigration status, and financial resources. Neither DHS nor the IJ explained why this was not sufficient to establish a "fixed address." That Petitioner lived and worked elsewhere before settling in New Hampshire does not mean he is a flight risk and will abandon his asylum application. It means that he has relocated in order to find a more stable work and living situation. This should be a positive not a negative factor in the analysis. As such, DHS demonstrably failed to meet its burden of proving that Mr. Bazarov is a flight risk by a preponderance of the evidence that no amount of bond or alternative to detention could ameliorate.

An IJ errs where they do not conduct an individualized balancing test according to the factors articulated in *Guerra*. *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 at *7-9 (C.D. Cal. Mar. 5, 2026). Nevertheless, the IJ did just that and found DHS had met their burden without any meaningful analysis of the substantial evidence submitted by Mr. Bazarov, and thus violated Mr. Bazarov's due process rights. *See, e.g., I.G.S. v. Nessinger*, No.

12

25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 at \*9 (D.R.I. Dec. 3, 2025); *Mendez Trigueros v. Guardian*, 1:26-cv-00205-AJT-WBP, Doc. 13 (E.D. Va. Feb. 18, 2026); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at \*4 (D. Me. Aug. 29, 2025)).

The IJ's cursory analysis of Petitioner's positive equities without any mention of the weight afforded to such evidence is tantamount to the IJ ignoring such evidence. *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 (noting that merely citing the standard does not discharge an adjudicator of meaningfully applying it); *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 6 (citing *Garcia*, 2025 WL 3466312 at \*1); *Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 6. *See Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 at \*7-9 (C.D. Cal. Mar. 5, 2026) (finding an IJ errs where they do not conduct an individualized balancing test according to the factors articulated in *Matter of Guerra*).

Thus, the evidence submitted by DHS against Mr. Bazarov was insufficient as a matter of law to support the IJ's conclusion that Mr. Bazarov is a flight risk that no amount of bond or condition could ameliorate, and the IJ's reliance on such evidence violated Mr. Bazarov's due process rights.

### 2. The IJ's exercise of discretion in denying bond was so arbitrary and capricious that it violated fundamental tenets of due process.

The District Court may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision.").

13

The BIA has recognized a non-exhaustive list of factors relevant to a bond determination, including whether the noncitizen has a fixed address in the U.S., length of residence and family ties in the United States, employment history, and criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). The IJ must consider all relevant factors in making a determination whether to grant bond; placing undue weight on one factor while failing to take others into account renders her decision arbitrary and violates due process. *See Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025).

The immigration judge's decision to deny bond based on erroneous conclusions regarding Mr. Bazarov's alleged criminal history and the fact that Mr. Bazarov has lived in more than one place since arriving in the United States is so lacking in evidentiary connection to current flight risk that it rendered the bond determination arbitrary and capricious, and thus violated due process. *See Montesinos Olivar v. Hyde*, No. 1:26-cv-11102-ADB, Doc. No. 14 (D. Mass. May 7, 2026); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 (noting tenuous connection between evidence that IJ considered and the petitioner's actual risk of flight). A constitutionally-compliant bond hearing requires that the considerations relied upon to determine whether bond is warranted have a clear "evidentiary connection" to the determining criteria of danger to the community or flight risk. *Mendez Trigueros v. Guadian*, No. 1:26-cv-205, Doc. 13, at 5 (E.D. Va. Feb. 18, 2026). As the court explained in *Mendez Trigueros*, where "the considerations upon which it was determined that Petitioner constitutes a flight risk were so lacking in probative value as to that issue that their use in determining flight risk failed to provide the Petitioner with constitutionally sufficient due process," the Petitioner is entitled to a constitutionally-compliant bond hearing. *Id.* at 6–7.

14

In *Olivar*, a similarly situated petitioner was arrested by immigration authorities in Maine on a roofing job, while his fixed address was in New York. No. 1:26-cv-11102-ADB, Doc. No. 14. The IJ denied bond, because there was "contradictory evidence on the record. . . [to] show. . . where he will live and attend his hearing." *Id.* Another session of this Court concluded "the evidence in the record before the [IJ] could not, as a matter of law, have supported the [IJ]'s decision, which appears so arbitrary as to violate due process." *Id.* Similarly here, where the IJ "utterly failed to grapple with . . . the substantial body of evidence relevant to the bond determination presented by [Mr. Bazarov] and the government," *id.*, the IJ acted arbitrarily and capriciously.

Similarly, in *Vacas Espinoza*, the petitioner was ordered immediately released after being erroneously denied bond on flight risk grounds. *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15. There, another session of this Court concluded that the IJ had failed to consider probative evidence, failed to meaningfully grapple with evidence on the record, and relied on evidence that was not probative of flight risk. *Id.* As such, the Court found the bond denial to be arbitrary and capricious and ordered the petitioner's immediate release. *Id.* Here, Petitioner has similarly been denied on tenuous grounds without meaningful consideration of substantial evidence to the contrary.

### 3. The IJ failed to consider alternatives to detention in her analysis of flight risk.

In denying bond, the IJ stated that no amount of bond or condition could assure Petitioner's future appearance in the Immigration Court. Freidel Decl., Ex. 1 at 4. District Courts have found that an IJ merely mentioning alternatives to detention being insufficient in their denial of bond, without explanation as to why, does not constitute meaningful consideration of such alternatives. *See Espinoza v. Maldonado*, No. 26-CV-01007, Doc. No. 28 at 6-7 (E.D.N.Y.

15

2026). *See also Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15; *Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 5-6; *Costa,* No. 25-CV-13469-AK, 2026 WL 371198; *Costa*, 2026 WL 371198; *Brito v. Barr*, 415 F. Supp. 3d 258, 267-71 (D. Mass. 2019), aff'd in part, vacated in part, 22 F.4th 240 (1st Cir. 2021); *Reid v. Donelan,* 390 F. Supp. 3d 201, 225 (D. Mass. 2019); *see also Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017) ("Is consideration of . . . possible alternative release conditions [] necessary to ensure that the conditions of their release will be reasonably related to the governmental interest in ensuring their appearance at future hearings? We conclude that the answer is yes."); *Hernandez-Aviles v. Decker*, No. 20 Civ. 7636, 2020 U.S. Dist. LEXIS 181925, at *7-8 (S.D.N.Y. Oct. 1, 2020) (holding that "not considering alternatives to detention or ability to pay a bond would run afoul of the protections afforded by the Due Process Clause" and that "if there is a viable option short of detention such that the Government's case for detention is no longer clear and convincing," the Fifth Amendment requires that it be considered before confinement is ordered).

The IJ's conclusion here is insufficient to constitute substantive consideration of alternatives to detention. *See Espinoza v. Maldonado*, No. 26-CV-01007 at 6-7 (E.D.N.Y. 2026). *Espinoza v. Maldonado*, No. 26-CV-01007, Doc. No. 28 at 6-7 (E.D.N.Y. 2026). *See also Olivar*, no. 1:26-cv-11102-ADB, Doc. No. 10 ("the immigration judge's statement that no bond would mitigate his risk of flight does not reflect meaningful consideration of alternatives to detention"). This is a significant omission when due process generally mandates that loss of liberty be narrowly tailored even when protecting a proper governmental interest.

Courts recognize that alternatives to detention, such as GPS monitoring or check-ins, are proven to be highly effective in mitigating flight risk for noncitizens in immigration proceedings. *See, e.g., Hernandez*, 872 F.3d at 991 (recognizing that Intensive Supervision Appearance

16

Program (ISAP) "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 1233883, at *12 (E.D. Cal. Apr. 29, 2025). Under BIA precedent, when an IJ finds an individual does not pose a danger, they should decide the amount of bond necessary to ensure the noncitizen's presence at future hearings and to ensure the noncitizen will report for removal if ordered to do so. *Matter of Urena*, 25 I&N Dec. 140 (BIA 2009).

Imposing continued civil detention, while failing to consider less restrictive alternatives to detention violates Mr. Bazarov's constitutional rights. Mr. Bazarov is currently detained at Plymouth County Correctional Facility, where he is subject to criminal conditions of confinement, despite never having been convicted of a crime. *See Hernandez-Lara*, 10 F.4th at 28 ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes.") (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2nd Cir. 2020)). If a less restrictive alternative to detention is available, it must be meaningfully considered.

Although the First Circuit has not directly addressed this issue, the Court has referred favorably to the requirement that IJs address alternatives to detention in custody redetermination hearings. In *Hernandez-Lara*, the court cited favorably to the Ninth Circuit's holding that IJs must "consider a noncitizen's financial circumstances and alternative conditions of release during section 1226(a) bond hearings." *Hernandez-Lara*, 10 F.4th at 45 (citing *Hernandez*, 872 F.3d at 990–91). In *Doe v. Tompkins*, the First Circuit affirmed a district court order that required IJs to "consider alternative methods to ensure the safety of the community and [the petitioner's] future appearances like GPS monitoring," declining to disturb that portion of the ruling only because

17

neither party raised it on appeal. *Doe v. Tompkins,* No. 18-12266, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), aff'd, 11 F.4th 1 (1st Cir. 2021).

In *Brito v. Garland*, the First Circuit, although vacating the district court decision on administrative exhaustion grounds, observed that "it is easy to see how conditions of release might shape an IJ's determination as to whether a noncitizen poses a flight risk or danger to the community," and "[i]f due process requires an IJ to consider alternatives to detention before making a determination about dangerousness or risk of flight, the IJs in the petitioners' cases might well have reached different decisions as to . . . whether to release the petitioners on bond." *Brito*, 22 F.4th at 254-55.

Accordingly, District Courts within the First Circuit have repeatedly found that an IJ's failure to consider alternatives to detention violates a noncitizen petitioner's due process rights. *See, e.g.*, *Costa*, 2026 WL 371198, at *3 (holding an IJ's "failure to consider whether alternatives to detention or other less restrictive means could address the risks of danger posed by Petitioner to the community was constitutionally deficient"); *Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. No. 8 at 16–18 (D.R.I. Mar. 13, 2026). In *Higiro*, the court explained that "[d]etention must bear a 'reasonable relation' to the purpose for which the individual is detained," and that two governmental interests legitimately advanced by immigration detention are (1) ensuring the noncitizen's appearance at future proceedings and (2) preventing danger to the community." *Id.* (quoting *Zadvydas*, 533 U.S. at 690). Thus, requiring an IJ to consider alternatives to detention "helps to ensure that detention is not arbitrarily imposed and that it bears a reasonable relation to the Government's interests." *Id.* Moreover, the IJ must "consider whether alternatives to detention are warranted *before* making any determination as to flight risk or dangerousness." *Higiro*, No. 26-cv-00105-JJM-AEM, at 18.

18

Here, the IJ did not fulfill this responsibility, and her failure to meaningfully consider alternatives to detention violated Mr. Bazarov's due process rights.

## IV. CONCLUSION

Petitioner respectfully requests that the Court enforce its July 16, 2026 order and release Petitioner, as Respondents have not provided a bond hearing that complied with the requirements of the Court's order and the U.S. Constitution. In the alternative, Petitioner asks for the District Court, pursuant to its equitable powers, to release Mr. Bazarov on alternatives to detention such as GPS monitoring, hold its own bond hearing, or grant any other relief that the court sees fit.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Irene C. Freidel*
Rhonda Tietjen
BBO# 559051
PAIR Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(617) 947-6349; ifreidel@pairproject.org

*Pro bono counsel for Petitioner*

## CERTIFICATE OF SERVICE

I, Irene C. Freidel, hereby certify that I caused a copy of the foregoing Memorandum to be served on Respondents' counsel via the CM/ECF system on this 14th day of August, 2026.

Dated: August 14, 2026                          */s/ Irene C. Freidel*
                                                Irene C. Freidel